UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JEANNIE HERNANDEZ, *et al*, | § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-355 |
| | § | |
| DIGNITY MEMORIAL NETWORK, INC.; dba MEMORY GARDENS OF CORPUS CHRISTI, *et al*, | § § § § | |
| Defendants. | § | |

## ORDER

Pending is Defendants' Motion for Summary Judgment and Plaintiffs' Response. (D.E. 14 and 17). For the reasons stated below, the executed release of all claims is enforceable and therefore, the Motion is **GRANTED** and this case is **DISMISSED**.

**I.   JURISDICTION**

The Court has diversity jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1). Upon consent of the parties, Senior United States Judge Hayden Head reassigned this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636. (D.E. 10).

**II.   BACKGROUND**

Prior to his death, Plaintiffs' decedent, Manuel C. Cortez and his wife, Plaintiff

Esperanza Cortez, entered into an agreement in June 1988 with at least one Defendant[1] for pre-paid and/or insurance backed burial plots and funeral services. While there is some dispute as to the exact plot numbers assigned and which services were included, the parties agree there were two separate side by side plots purchased. In 2002, Victor Cortez, the son of Mr. Cortez and Mrs. Cortez, passed away. Mr. and Mrs. Cortez elected to bury their son in one of the two plots purchased in 1988. In 2002, Mr. Cortez purchased a second interment right, also known as double depth, in the remaining unused burial plot meaning Mr. and Mrs. Cortez would both be interred in the same space. (D.E. 14, Page 14).

Mr. Cortez passed away on October 1, 2009. Mrs. Cortez and her daughter and executor of Mr. Cortez's estate, Plaintiff Jeannie Hernandez, met with Defendants' representatives regarding Mr. Cortez's burial arrangements. An issue arose as Mrs. Cortez wanted separate plots for both herself and her husband, not double depth.[2] The parties negotiated and Plaintiffs received, at no additional cost, two burial plots in a different section of the cemetery. (D.E. 14, Page 20). In a letter from Defendants' marketing manager dated October 6, 2009, the parties memorialized this agreement, including a release, as follows:

---

[1] There is a dispute about which Defendants should be held liable in this matter. As the Court finds the Plaintiffs executed a valid release of all claims as further discussed below, the Court need not address this issue.

[2] There is a dispute about whether the Plaintiffs and/or Mr. Cortez understood the meaning of double depth prior to entering into an agreement. Again, as the Court finds the Plaintiffs executed a valid release of all claims as further discussed below, the Court need not address this issue.

Thank you for meeting with me today. I write to you to follow-up on our conversation regarding interment rights purchased at Memory Gardens Cemetery.

As I explained, Manuel Cortez, Jr. and Esperanza Cortez purchased two rights of internment in the burial space described as Section O, Lot 82, Space 11, to be used for a double depth internment. You have indicated that Mrs. Cortez does not wish to be interred in a double depth fashion and did not understand the meaning of the term "double depth."

Because of the confusion, and in the spirit of customer service, we are willing to exchange the double depth rights of internment in the burial space described as Section O, Lot 82, Space 11 for two side by side interment rights described as Section Q, Lot 179, Spaces 3 & 4. You have indicated this is acceptable. As we discussed, each of you will be required to sign the appropriate documentation to relinquish your ownership interest in the interment rights in Space 11. Once the appropriate documentation is executed and returned to me, we will provide the two above-referenced side by side interment rights at no additional charge.

Please sign below to indicate that, in consideration for the above interment rights, this issue has been fully and completely resolved to your satisfaction and that you hereby release Memory Gardens from any and all claims related to or arising out of the issue mentioned above. If you have any questions, please contact me at (361) 265-9221. I appreciate your time, patience and understanding.

Plaintiffs, in addition to Defendants' marketing manager, signed this agreement on October 6, 2009. (D.E. 14, Page 20). Mr. Cortez was then buried in one of the spaces in Section Q. Plaintiffs filed the pending action in state court on October 1, 2013, and it was removed on November 7, 2013. (D.E. 1).

### III. APPLICABLE LAW AND DISCUSSION

A. *Summary Judgment*

Summary judgment is appropriate where the movant shows there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In reaching its decision, the Court must consider the affidavits, depositions, declarations, stipulations, and other documents presented to the Court in the light most favorable to the non-movant. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The substantive law identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of a material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Id*.

The movant has the initial burden of showing that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The moving party bears the burden of identifying those portions of the record he or she believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322-25. Once a movant makes a properly supported motion, the burden then shifts to the non-movant to show the existence of a genuine fact issue for trial. *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

The non-movant cannot merely rest on the allegations of the pleadings or on unsubstantiated, subjective beliefs. *Anderson*, 477 U.S. at 248-49. Plaintiffs must establish there are material, controverted facts precluding summary judgment. *Id*. Additionally, the non-movant's burden is not satisfied by showing "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or

by only a scintilla of evidence." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(*quoting Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see also Brown v. Houston*, 337 F.3d 539, 541 (5th Cir. 2003)("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."); *see also Anderson*, 477 U.S. at 249-52. Accordingly, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. Where the non-movant fails to present evidence to support his or her claims, there can be no genuine issue of material fact because of the complete failure of proof on an essential matter for which the non-movant bears the burden of proof renders all other issues immaterial. *Id.* at 323.

B.  *Release and Duress*

Defendants move for summary judgment on all of Plaintiffs' claims based on the signed release between the parties. Plaintiffs agreed at the hearing held on October 3, 2014, that if the release is found to be valid, their claims are barred. Therefore, the Court must first determine whether the signed release in this matter is enforceable. Because this is a diversity case, the Court applies state substantive law. *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999)(citations omitted); *see Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). The parties do not dispute Texas law applies.

A release is an agreement or contract in which one party agrees that a duty or obligation owed by the other party is discharged immediately on the occurrence of a

condition. *National Union Fire Ins. Co. of Pittsburgh, P.A. v. Insurance Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.-Houston [14th Dist.] 1997), *affd*, 20 S.W.3d 692 (Tex. 2000). "A release, valid on its face, is, until set aside, a complete bar to any action based on matters covered in the release." *McMahan v. Greenwood*, 108 S.W.3d 467, 478 (Tex. App.-Houston [14th Dist.] 2003, no pet.)(citations omitted).

Defendants have presented competent summary judgment evidence establishing that Plaintiffs received consideration for signing the release by receiving an additional burial plot at no additional charge rather than one, double depth burial space. (D.E. 14, Page 20). To defeat the Defendants' asserted ground in its summary judgment motion based upon the release, the burden is on Plaintiff to present evidence to create a fact issue that the release should be set aside. *See* Tex. R. Civ. P. 94 (listing duress as an affirmative defense). Plaintiffs have failed to do so.

Plaintiffs assert they signed the release under duress. Under Texas law, the elements of duress are: (1) a threat or action was taken without legal justification; (2) the threat or action was of such character as to destroy the other party's free agency; (3) the threat or action overcame the opposing party's free will and caused it to do that which it would not otherwise have done and was not legally bound to do; (4) the restraint was imminent; and (5) the opposing party had no present means of protection. *McMahan*, 108 S.W.3d at 482 (*citing Chapman Children's Trust v. Porter & Hedges*, L.L.P., 32 S.W.3d 429, 443 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). The Texas Supreme Court has "characterized duress as the result of threats which render persons incapable of exercising their free agency and which destroy the power to withhold

consent." *Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 877 (Tex. 2005)(citations omitted). "[T]he compulsion must be actual and imminent, and not merely feigned or imagined." *Id.* at 879. The intimidation will be sufficient if it induces the party claiming duress to perform, contrary to his or her will, some act that he or she is not legally bound to do. *Windham v. Alexander, Weston & Poehner, P.C.*, 887 S.W.2d 182, 185 (Tex. App-Texarkana 1994, writ denied)(*citing Lawrence v. J.M. Huber Corp.*, 347 S.W.2d 5 (Tex. Civ. App.-Waco 1961, no writ).

Instead of attempting to address each of the elements of duress, Plaintiffs assert they were under duress when they signed the release because they were grieving the loss of Mr. Cortez and were not in the proper mental or emotional state to execute the release. Plaintiffs further allege they were at a disadvantage because of Defendants' superior knowledge of funeral contracts. (D.E. 17, Pages 3 and 6). Plaintiffs also assert Defendants refused to bury Mr. Cortez unless and until a release was signed.

As evidence of duress, Plaintiffs cite generally to Plaintiff Cortez's affidavit. (D.E. 17, Pages 24-29). Plaintiff Cortez averred:

> My husband Manuel C. Cortez passed away on October 1, 2009. The day after his passing, I learned for the first time that we could not be buried side by side. The Memory Gardens representatives explained to me for the first time what "double depth" burials are and told my children and I that my husband had purchased one space for two people to buried one on top of the other. I was shocked, and I could see that my children were as well. Memory Gardens representatives also told us that my husband would not be buried at all at the Memory Gardens facility unless suitable arrangements were made.
>
> At that time, my children were all very emotionally distraught. The grief was apparent on all of my family children's faces, and I was in a deep state of depression. After discussing the matter, and specifically because the

Memory Gardens representatives told me that my husband would not be buried as we thought, we decided to sign the paper transferring my husband's rights to different burial plots. I felt like I had no other choice at the time. (D.E. 17, Page 25)

Plaintiff Hernandez similarly averred:

My mother was visibly shocked. I left the funeral home to retrieve our paperwork. Upon my return, my mother was very upset because she had just learned about the double depth burial. A big argument began. Memory Gardens representatives also told us that my father would not be buried at all at the Memory Gardens facility unless suitable arrangements were made.

At that time, my brother, sisters and mother were all emotionally distraught. The grief was apparent on all of my family members' faces. After discussing the matter, and specifically because the Memory Gardens representatives told me that my father would not be buried as we thought, we decided to sign the paper transferring my father's rights to different burial plots. I felt like I had no other choice at the time. (D.E. 17, Page 22).

During her deposition, Plaintiff Hernandez stated:

…[W]ithout these signatures [on the release], my dad was going to be kept in a freezer, because that's where my dad was being held. And without the relinquishing and these signatures, my dad was not going to be buried…All they told us was that there was no room for my dad to be placed the way that my mother and my family members wanted, which was my brother, my mother, and my dad, that they only had that additional space. And that was not acceptable to either my mother or myself or my family members, and the only thing that we could come up with-what I mean by "we" was my family members and Memory Gardens staff-to satisfy us and to keep my dad from being kept any longer in the freezer was to come up with some type of agreement. Now, why they chose these particular location and space, I don't know. I was-I was not privileged to that. I was just upset. I didn't want to be there in Memory Gardens any more than I had to. So whoever came with this solution, I was not aware of what they came up-I know there was a lot of bickering, a lot of uneasiness, and, I'm going to be very blunt with you, shouting. It was a shouting match. People's emotions were running high. And what actually was exchanged and how this came about, I don't know. (D.E. 17, Pages 17 and 18).

Defendants have objected to portions of Plaintiffs' affidavits as hearsay, most importantly Plaintiffs' statements regarding Defendants' representatives' statements.³ (D.E. 19). Plaintiffs maintain the statements made by Defendants' representatives are not hearsay but are instead party admissions under Federal Rule of Evidence 801(d)(2).⁴ While Rule 801 provides that a statement by the party's agent or employee concerning a matter within the scope of the agency or employment made during the existence of the relationship is not hearsay, it further provides that the "statement must be considered but does not by itself establish the declarant's authority" or "the existence or scope of the relationship." *Id.*

Plaintiffs' allegations that the Defendants threatened to withhold or to refuse burial of Mr. Cortez if Plaintiffs did not sign the release do not fall within the exclusion of Rule 801 as Plaintiffs do not identify the names or job titles of Defendants' representatives who allegedly made the statements in question. *Davis v. Mobil Oil Exploration & Producing Southeast, Inc.*, 864 F.2d 1171, 1174 (5th Cir. 1989)(While a name is not required in all cases, a district court should be presented with sufficient evidence to conclude that the person who made a statement is in fact an agent of the party for purposes of making an admission pursuant to Rule 801); *see also Harrison v. Formosa Plastics Corp. Tex.*, 776 F. Supp. 2d 433, 440 (S.D. Tex. 2011)(Plaintiff failed

---

³ At the October 3, 2014 hearing, Plaintiffs' counsel was given leave to file supplemental briefing on this issue within seven days. No supplemental briefing has been filed.

⁴ The relevant portion of Rule 801 provides that a statement, offered against an opposing party, is not hearsay if it (1) was made by the party in an individual or representative capacity; (2) is one the party manifested that it adopted or believed to be true; (3) was made by a person whom the party authorized to make a statement on the subject; (4) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed.

to establish that the statements of the Defendants' purported employees fell within an exception to the hearsay rule because the Plaintiff failed to identify the names or job titles of the Defendant's purported employees).  Plaintiffs fail to establish these representatives were authorized to speak on behalf of Defendants or that the statements were otherwise made during the course of the speakers' employment.  *Davis*, 864 F.2d at 1174; s*ee also Kelly v. Labouisse*, 364 Fed. Appx. 895, 896 (5th Cir. 2010)(*citing Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1566 (11th Cir. 1991)(holding that the inquiry regarding scope of employment was whether the speaker was authorized to act for his principal concerning the matter about which he allegedly spoke).  Therefore, Plaintiffs fail to establish these purported representatives' alleged statements meet the requirements to fall within any exception to the hearsay rule or that these statements are not hearsay.  A district court may only consider admissible evidence in ruling on a motion for summary judgment and as such, it is not appropriate for consideration in ruling on this summary judgment motion.  *Coleman v. Jason Pharm.*, 50 F. App'x 302, 306 (5th Cir. 2013)(*citing* Fed. R. Civ. Proc. 56(c)(2)).  Plaintiffs have presented no other evidence of duress as nothing else as alleged can be construed as a threat or action, which is a necessary element of duress under Texas law.  *McMahan*, 108 S.W.3d at 482.

However, even if the Court considered all of the allegations including the hearsay statements, the facts alleged do not approach the level of conduct required to prove duress under Texas law.  The Plaintiffs, after negotiating with Defendants, signed a valid, fully executed release in exchange for receiving two side by side burial plots at no additional cost.  Moreover, Plaintiffs' decedent was then buried in one of those plots and

the second remains available for Plaintiffs' future use. Plaintiffs do not allege Defendants' representatives stated Defendants would not release the decedent for burial, simply that Defendants would not bury Mr. Cortez as Plaintiffs "thought" and would not bury Mr. Cortez "unless suitable arrangements were made." (D.E. 17, Pages 22 and 25). Plaintiffs' free agency and free will was not destroyed or overcome as Plaintiffs could have sought the services of a different funeral home and cemetery to bury Mr. Cortez and then taken legal recourse. *McMahan*, 108 S.W.3d at 482.

There is no evidence before the Court that Plaintiffs were not competent to sign the release. Grief alone does not amount to duress. If it did, no contract entered into with a funeral home to inter a loved one would ever be found valid. Plaintiffs may not have been pleased with the choices negotiated with the Defendants but, when circumstances present a series of less than satisfactory alternatives, the choice of the least offending is not duress. As a result, Plaintiffs' unsubstantiated assertions of duress are insufficient to meet their burden of demonstrating that the release is invalid. Therefore, Plaintiffs have failed to raise a genuine issue of material fact and the release is a binding contract barring this action.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment and this case is **DISMISSED with prejudice**. (D.E. 14).

ORDERED this 24th day of October, 2014.

_Jason Libby_
Jason B. Libby
United States Magistrate Judge

11 / 11